## DAWSON v. GRAHAM.

1. **Promissory Note:** CONSIDERATION.   In an action upon a promissory note, it was pleaded that the title to the land for which the note was given had failed; but it appeared that the claimant under the adverse title had not succeeded in establishing his claim in an action for that purpose: *Held* that the plea constituted no defense to the action.

2. **Practice:** INSTRUCTION: VERDICT.   A verdict returned in conflict with an instruction of the court and entirely unsupported by the evidence will not sustain a judgment.

*Appeal from Warren Circuit Court.*

THURSDAY, APRIL 20.

On the 24th day of June, 1872, the plaintiff filed in the Warren circuit court a petition claiming the amount of a promissory note, executed by defendant to plaintiff on the 27th day of February, 1866, for the sum of two hundred and fifty dollars, payable four months after date with interest.

The defendant answered, admitting the execution of the note, and alleging, in substance, that it was given to plaintiff, for the purchase price in part, by the Buffalo Creek Oil Company, of which plaintiff was a member, of a small lot of oil land, containing about one-half acre, and that plaintiff had no title to said lot, in consequence whereof the consideration of the note has failed.

There was a jury trial, and a verdict and judgment for defendant. Plaintiff appeals.

*Bryan & Seevers*, for appellant.

While the grantor of real estate cannot compel his grantee to take possession of and occupy the premises sold, yet if the latter neglects to do so and is prejudiced thereby, it will not affect the grantor's right to recover the purchase price. (2 Kent's Com., 472; *Allen v. Pegram*, 16 Iowa, 174.) The return of a deed is not sufficient to revest the grantor with title to the property; this can only be effected by a voluntary conveyance from the grantee. (*Hull v. McCall*, 13 Iowa, 471.)

*Williamson & Parrott*, for appellee.

DAY, J.—The facts clearly, and without even conflict, established by the testimony, are as follows: In the winter of 1865-6, the defendant and twenty-five others organized the Buffalo Creek Oil Company.

In February, 1866, this company made a purchase from plaintiff of about half an acre of oil land, known as lot 13, for which they were to pay six thousand five hundred dollars. Fourteen hundred dollars were paid in cash, and the balance in notes, of which the note in controversy was one.

One Samuel Watt originally owned 26 acres of oil land, divided into lots, and including said lot number thirteen.

On the 1st day of April, 1861, Samuel Watt executed to John S. Stewart, as trustee for the Island Run Union Oil Company, a lease of said premises, the lease requiring said company to commence exploring for oil, salt water and minerals within three months from the date of the lease, or forfeit their rights thereunder.

At the time plaintiff sold to the Buffalo Creek Oil Company, Dawson, Donahoe and Kuhn had purchased the twenty-six acres above named from Samuel Watt, and plaintiff had purchased said lot thirteen from Dawson, Donahoe and Kuhn, but Watt had made no deed to Dawson, Donahoe and Kuhn, nor

had Dawson, Donahoe and Kuhn deeded to plaintiff, so that the plaintiff was the equitable owner of lot thirteen, but the legal title was still in Watt.

In order to save trouble and expense in deeding the plain-tiff, on the 15th day of March, 1866, procured Samuel Watt, and May, his wife, to deed said lot thirteen to Wm. A. Jamison, in trust for the Buffalo Creek Oil Company.

On the same day Samuel Watt and wife deeded to Dawson, Donahoe and Kuhn, the twenty-six acres sold to them, with the exception of said lot thirteen, deeded to the Buffalo Creek Oil Company. The Buffalo Creek Oil Company were not satisfied with the deed from Watt, but wanted one, for some reason, from Dawson.

Thereupon the plaintiff, on the 30th day of May, 1866, procured a deed from Dawson, Donahoe and Kuhn for said lot thirteen, and, on the next day, plaintiff deeded said lot to the oil company. At this time the parties overlooked the fact that Watt had not deeded lot thirteen to Dawson, Donahoe and Kuhn. When this fact was discovered, on the 3rd day of June, 1872, Samuel Watt and his wife deeded lot thirteen to the plaintiff, thus perfecting the title of the oil company through this chain. The court, amongst other things, instructed the jury as follows : "Before you can find for the defendant, you must be satisfied from the evidence that the title made or caused to be made by the plaintiff to the Buffalo Creek Oil Company has wholly failed."

The only complaint made upon the trial, by the defendant, of plaintiff's title, grows out of the lease before named to Stewart.

From the evidence it appears that at the March Term, 1866, of the Court of Common Pleas for Beaver County, Pennsylvania, John S. Stewart, trustee for the Island Run Union Oil Company, commenced an action of ejectment against J. R. Blackmore, E. P. Kuhn, D. M. Donahoe, James L. B. Dawson and Samuel Watt, for the land leased by Samuel Watt to Stewart. On the 30th of June, 1866, the cause was determined in favor of defendants, and the premises described in the ejectment suit were awarded to

1. PROMISSO-
RY NOTE: con-
sideration.

them. Afterwards the plaintiff paid the costs and appealed. On the 8th of April, 1868, the cause was settled, the plaintiff acknowledging full satisfaction of his claim, and the eject-ment suit was discontinued. This suit entirely disposed of all adverse claim under this lease. The deed of Watt to Jamison, in trust for the oil company, if accepted by the company, vested in it an absolute title, which could be divested only by reconveyance. But if this deed was not accepted by the company, then the conveyance to it by plaintiff, followed by the deed from Watt to plaintiff, vested in the company a good title to the property sold. So that, when this suit was com-menced, instead of the evidence showing that the title made by the plaintiff to the Buffalo Creek Oil Company had wholly failed, it shows affirmatively that the title was good and inde-feasible.

The verdict of the jury, therefore, is opposed to the instruc-tion of the court, and is entirely unsupported by the evidence.

2. PRACTICE: instruction: verdict. Upon this ground, without mentioning other reasons, which, probably, would lead to the same conclusion, the judgment is

REVERSED.